# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIR & LIQUID SYSTEMS CORPORATION; AMPCO-PITTSBURGH CORPORATION | ) ) ) | Civil Action No. 11-00247 |
| | ) | |
| Plaintiffs, | ) | **Judge Joy Flowers Conti** |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded |
| ALLIANZ UNDERWRITERS INSURANCE COMPANY, *et al.*, | ) ) | Electronically Filed |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HOWDEN NORTH AMERICA INC. | ) ) | |
| | ) | |
| Counterclaim/Crossclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIR & LIQUID SYSTEMS CORPORATION; AMPCO-PITTSBURGH CORPORATION | ) ) ) | |
| | ) | |
| Counterclaim-Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLIANZ UNDERWRITERS INSURANCE COMPANY (f/k/a Allianz Underwriters, Inc.); ALLSTATE INSURANCE COMPANY (as successor-in-interest to Northbrook Excess and Surplus Insurance Company); THE AMERICAN INSURANCE COMPANY; ASSICURAZIONI GENERALI S.p.A.; INTERNATIONAL INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; THE DOMINION INSURANCE COMPANY LIMITED; EXECUTIVE RISK INDEMNITY INC. (f/k/a ERIC Reinsurance Company, f/k/a American Excess Insurance Company); | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

FEDERAL INSURANCE COMPANY;                    )
FIRST STATE INSURANCE COMPANY;  )
HARPER VERSICHERUNGS AG (f/k/a          )
Harper Insurance Limited, f/k/a Turegum     )
Insurance Company); LEXINGTON             )
INSURANCE COMPANY;                               )
MT. McKINLEY INSURANCE                        )
COMPANY (f/k/a Gilbraltar Casualty            )
Company); SOMPO JAPAN                            )
INSURANCE INC.; TIG INSURANCE             )
COMPANY (as successor by merger to           )
International Insurance Company);                  )
TWIN CITY FIRE INSURANCE                       )
COMPANY; UNITED STATES FIRE               )
INSURANCE COMPANY; CERTAIN               )
UNDERWRITERS AT LLOYD'S,                     )
LONDON                                                       )
                                                                      )
         Crossclaim-Defendants,                        )
                                                                      )
         and                                                      )
                                                                      )
CERTAIN UNDERWRITERS AT                      )
LLOYD'S, LONDON; EQUITAS                       )
INSURANCE LIMITED (as successor-in-        )
interest to Certain Underwriters at              )
Lloyd's, London); MUNICH                           )
REINSURANCE AMERICA, INC. (as           )
successor-in-interest to American Excess      )
Insurance Company); OLD REPUBLIC          )
INSURANCE COMPANY;                               )
STRONGHOLD INSURANCE                          )
COMPANY; TENECOM LIMITED               )
(f/k/a Yasuda Fire & Marine Ins. Co.           )
(U.K.) Ltd.);                                                   )
ACE INSURANCE S.A. N.V. (f/k/a             )
CIGNA Ins. Co. of Europe S.A. N.V.);         )
FARADAY REINSURANCE                           )
COMPANY LTD. (as purported                     )
successor-in-interest to General Star           )
International Indemnity Ltd.);                       )
GENERAL STAR INTERNATIONAL            )
INDEMNITY LTD.; HDI-GERLING             )
INDUSTRIE VERSICHERUNG AG;           )
NEW HAMPSHIRE INSURANCE                   )
COMPANY; PORTMAN INSURANCE          )

| | |
|---|---|
| LTD. (f/k/a AXA Global Risks (UK) Ltd.);  ) | |
| QBE INSURANCE (EUROPE) LTD.           ) | |
| (f/k/a QBE International Insurance Ltd.);   ) | |
| SWISS RE EUROPE S.A. (successor-in-     ) | |
| interest to Swiss Re Frankona Reinsurance  ) | |
| Ltd. (f/k/a ERC Frankona                ) | |
| Reinsurance Ltd.))                     ) | |
| ) | |
| ) | |
| Additional Counterclaim/              ) | |
| Crossclaim Defendants.                 ) | |

**DEFENDANT HOWDEN NORTH AMERICA INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM AND ADDITIONAL PARTY CLAIM IN RESPONSE TO COMPLAINT FOR DECLARATORY JUDGMENT**

Defendant Howden North America Inc. ("HNA"), by its attorneys, pursuant to

Fed. R. Civ. P. 12(a), responds to the Complaint for Declaratory Relief ("Complaint") filed by

Plaintiffs Air & Liquid Systems Corporation ("Air & Liquid") and Ampco-Pittsburgh

Corporation ("Ampco-Pittsburgh") (collectively, "Plaintiffs") as follows:

## NATURE OF THE ACTION

1.        HNA admits that Ampco-Pittsburgh and certain of its subsidiaries have been

named as defendants in underlying lawsuits alleging personal injuries caused by exposure to

asbestos, and that Ampco-Pittsburgh is insured under the general liability policies at issue in this

action.  HNA is without knowledge or information sufficient to form a belief as to the truth of

the remainder of the allegations in Paragraph 1 of the Complaint and on that basis they are

denied.

2.        HNA admits that the Plaintiffs have filed a civil action for declaratory relief in

which they seek, *inter alia*, a declaration of the rights, duties, and liabilities of the parties under

certain insurance policies issued by the Defendant insurance companies.  HNA admits that it

contends it has chose in action rights under all of the polices at issue in this case and responds

further by incorporating by reference the allegations in the Counterclaim, Crossclaim, and

Additional Party Claim, below.  HNA is without knowledge or information sufficient to form a

belief as to the truth of the remainder of the allegations in Paragraph 2 of the Complaint and on

that basis they are denied.

## THE PARTIES

3.      HNA is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 3 of the Complaint and on that basis they are denied.

4.      HNA admits that Plaintiff Ampco-Pittsburgh is a Pennsylvania-based corporation.

HNA is without knowledge or information sufficient to form a belief as to the truth of the

remainder of the allegations in Paragraph 4 of the Complaint and on that basis they are denied.

5.      HNA admits that it is a corporation organized under the laws of Delaware with its

principal place of business in Camden, South Carolina, and that it is engaged primarily in the

business of manufacturing custom engineered air movement equipment.  As discussed in the

Counterclaim, Crossclaim, and Additional Party Claim, below, HNA is a successor-in-interest to

Buffalo Forge, and is also a successor to Howden Group America under the 1993 Agreement

discussed below.  HNA therefore has rights under the insurance policies at issue in this case.  To

the extent the remainder of the allegations contained in Paragraph 5 are inconsistent with those

set forth in the Counterclaim, Crossclaim, and Additional Party Claim, HNA denies them.

6.      HNA admits that all defendants other than HNA are insurance companies or

related affiliates and persons.  HNA otherwise denies the allegations in Paragraph 6 of the

Complaint.

## VENUE AND JURISDICTION

7.      HNA admits the allegations contained in Paragraph 7 of the Complaint.

8.      HNA admits the allegations contained in Paragraph 8 of the Complaint.

     a.      HNA admits the allegations contained in Paragraph 8.a. of the Complaint.

b.      HNA admits the allegations contained in Paragraph 8.b. of the Complaint.

c.      HNA admits the allegations contained in Paragraph 8.c. of the Complaint.

d.      HNA admits that Defendant Assicurazioni Generali S.p.A is a corporation organized under the laws of Italy with its principal place of business in Trieste, Italy.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 8.d. of the Complaint and on that basis they are denied.

e.      HNA admits the allegations contained in Paragraph 8.e. of the Complaint.

f.      HNA admits the allegations contained in Paragraph 8.f. of the Complaint.

g.      HNA admits that Defendant The Dominion Insurance Company Limited is a corporation organized under the laws of Scotland with its principal place of business in Glasgow, Scotland.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 8.g. of the Complaint and on that basis they are denied.

h.      HNA admits the allegations contained in Paragraph 8.h. of the Complaint.

i.      HNA admits the allegations contained in Paragraph 8.i. of the Complaint.

j.      HNA admits the allegations contained in Paragraph 8.j. of the Complaint.

k.      HNA admits that Defendant Harper Versicherungs AG is a corporation organized under the laws of Switzerland with its principal place of business in Zurich, Switzerland.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 8.k. of the Complaint and on that basis they are denied.

l.      HNA admits the allegations contained in Paragraph 8.l. of the Complaint.

m.      HNA admits the allegations contained in Paragraph 8.m. of the Complaint.

n.     HNA admits the allegations contained in Paragraph 8.n. of the Complaint.

o.     HNA admits that Defendant Sompo Japan Insurance Inc. is a corporation organized under the laws of Japan with its principal place of business in Tokyo, Japan.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 8.o. of the Complaint and on that basis they are denied.

p.     HNA admits the allegations contained in Paragraph 8.p. of the Complaint.

q.     HNA admits the allegations contained in Paragraph 8.q. of the Complaint.

r.     HNA admits the allegations contained in Paragraph 8.r. of the Complaint.

s.     HNA admits the allegations contained in Paragraph 8.s. of the Complaint. HNA further responds to this paragraph by incorporating by reference Paragraph 75, below.

t.     HNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.t. of the Complaint and on that basis they are denied.

9.     HNA admits the allegations contained in Paragraph 9 of the Complaint.

10.     HNA admits the allegations contained in Paragraph 10 of the Complaint.

## FACTUAL BACKGROUND

**A.     Plaintiffs' Historical Pennsylvania Insurance Program**

11.     HNA admits that Ampco-Pittsburgh is incorporated in Pennsylvania and headquartered in Pittsburgh, Pennsylvania.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 11 of the Complaint and on that basis they are denied.

12.     HNA responds by incorporating the allegations set forth in the Counterclaim, Crossclaim, and Additional Party Claim, below.  To the extent the allegations contained in Paragraph 12 are inconsistent with those set forth in the Counterclaim, Crossclaim, and Additional Party Claim, HNA denies them.

13.     HNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and on that basis they are denied.

14.     HNA responds by incorporating the allegations set forth in the Counterclaim, Crossclaim, and Additional Party Claim, below.  To the extent the allegations contained in Paragraph 14 are inconsistent with those set forth in the Counterclaim, Crossclaim, and Additional Party Claim, HNA denies them.  HNA specifically denies Plaintiffs' purported characterization of the relationship between Air & Liquid and the entity labeled "Buffalo Forge Company."  HNA admits that Buffalo Forge Company was an insured under all policies listed in Exhibit A to the Complaint.

15.     HNA admits the allegations contained in Paragraph 15, except that HNA denies that any Plaintiff other than Ampco-Pittsburgh has rights under the policies set forth in Exhibit A to the Complaint.

16.     HNA admits the allegations contained in Paragraph 16, except that HNA denies that any Plaintiff other than Ampco-Pittsburgh has rights under the policies set forth in Exhibit A to the Complaint.

**B.     The Underlying Claims**

17.     HNA admits that Ampco-Pittsburgh and certain of its subsidiaries have been named as defendants in underlying lawsuits alleging personal injuries caused by exposure to asbestos.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 17 of the Complaint and on that basis they are denied.

18.     HNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and on that basis they are denied.

19.     HNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint and on that basis they are denied.

20.     Upon information and belief, HNA admits that Ampco-Pittsburgh and certain of its subsidiaries have incurred costs relating to underlying lawsuits alleging personal injuries caused by exposure to asbestos.  HNA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 20 of the Complaint and on that basis they are denied.

## LEGAL CLAIMS

### COUNT I
### Declaratory Judgment - Duty to Indemnify
### Plaintiffs v. Defendant-Insurers

21.     The allegations in Paragraph 21 are not directed to or against HNA and therefore no response is required.

22.     The allegations in Paragraph 22 are not directed to or against HNA and therefore no response is required.

23.     The allegations in Paragraph 23 are not directed to or against HNA and therefore no response is required.

24.     The allegations in Paragraph 24 are not directed to or against HNA and therefore no response is required.

### COUNT II
### Declaratory Judgment - Duty to Defend and/or Pay Defense Costs
### Plaintiffs v. Defendant-Insurers

25.     The allegations in Paragraph 25 are not directed to or against HNA and therefore no response is required.

26.     The allegations in Paragraph 26 are not directed to or against HNA and therefore no response is required.

27.     The allegations in Paragraph 27 are not directed to or against HNA and therefore no response is required.

28.     The allegations in Paragraph 28 are not directed to or against HNA and therefore no response is required.

## COUNT III
### Declaratory Judgment - Duty to Indemnify
### Plaintiffs v. Howden

29.     HNA incorporates by reference and re-alleges herein the responses to the Complaint contained in Paragraph Nos. 1 through 28, above.

30.     HNA admits that the Defendant Insurers entered into legally binding contracts with Ampco-Pittsburgh.  HNA otherwise denies the allegations contained in Paragraph 30.

31.     The allegations in Paragraph 31 of the Complaint state legal conclusions to which no response is required, and in any event, HNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.  On these bases, and to the extent a response is required, the allegations are denied.

32.     HNA admits that, as set forth in the Counterclaim, Crossclaim, and Additional Party Claim, below, it has rights to coverage under the policies at issue for asbestos claims arising from the historical operations and products of Buffalo Forge Company.  HNA otherwise denies the allegations in Paragraph 32, and specifically denies those allegations to the extent that they suggest that HNA has no rights under the insurance policies set forth in Exhibit A to the Complaint.

33.     HNA admits that it disputes certain of the Plaintiffs' contentions and incorporates by reference and realleges herein its responses to the Complaint contained in Paragraphs 1 through 32, above, as well as its Counterclaim, Crossclaim, and Additional Party Claim, below.

The remainder of the allegations in Paragraph 33 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

**COUNT IV**
**Declaratory Judgment - Duty to Defend and/or Pay Defense Costs**
**Plaintiffs v. Howden**

34.     HNA incorporates by reference and re-alleges herein the responses to the Complaint contained in Paragraph Nos. 1 through 33, above.

35.     HNA admits that the Defendant Insurers entered into legally binding contracts with Ampco-Pittsburgh.  HNA otherwise denies the allegations contained in Paragraph 35 of the Complaint.

36.     HNA admits that, as set forth in the Counterclaim, Crossclaim, and Additional Party Claim, below, it has rights to coverage under the policies at issue for asbestos claims arising from the historical operations and products of Buffalo Forge Company.  HNA otherwise denies the allegations contained in Paragraph 36, and specifically denies those allegations to the extent they suggest that HNA has no rights under the insurance policies set forth in Exhibit A to the Complaint.

37.     HNA admits that it disputes certain of the Plaintiffs' contentions and incorporates by reference and realleges herein its responses to the Complaint contained in Paragraphs 1 through 36, above, as well as its Counterclaim, Crossclaim, and Additional Party Claim, below. The remainder of the allegations in Paragraph 37 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

38.     All allegations of material fact in the Complaint not expressly admitted are denied.  All allegations of material fact in the Complaint that are inconsistent with the allegations set forth in the Counterclaim, Crossclaim, and Additional Party Claim are likewise denied.

Furthermore, HNA reserves and fully preserves the right to amend its responsive pleading as this case proceeds in light of information learned during discovery or otherwise.

## AFFIRMATIVE DEFENSES

39.     Pursuant to Fed. R. Civ. P. 8(c), Howden Buffalo hereby avers the following affirmative defenses:

### First Affirmative Defense

40.     Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

41.     Plaintiffs' Complaint is barred by the doctrines of waiver and estoppel.

### Third Affirmative Defense

42.     Plaintiffs' Complaint is barred by the doctrine of laches.

### Fourth Affirmative Defense

43.     Plaintiffs' Complaint is barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

44.     Plaintiffs' Complaint is barred by Plaintiffs' failure to mitigate damages.

### Sixth Affirmative Defense

45.     Plaintiffs' damages should be offset by the amount of any damages that Plaintiffs have caused HNA.

### Seventh Affirmative Defense

46.     Plaintiffs' claims are barred to the extent that Plaintiffs have breached contractual obligations to HNA, including obligations under the May 1993 Stock Purchase Agreement or the 2005 Asbestos Funding Agreement (as defined below).

### Eighth Affirmative Defense

47.     Plaintiffs' claims are barred to the extent that HNA is entitled to indemnification against such claims from Plaintiffs under the May 1993 Stock Purchase Agreement or by operation of law.

### Ninth Affirmative Defense

48.     Plaintiffs' claims are barred to the extent that Plaintiffs or their subsidiaries or affiliates incurred unreasonable, inappropriate, or unnecessary costs to settle any of the underlying claims for which they seek coverage.

### Tenth Affirmative Defense

49.     Plaintiffs' claims are barred to the extent they would result in the imposition on HNA of deductibles, retentions, retrospective premiums or other charge-backs.

### Eleventh Affirmative Defense

50.     Plaintiffs' claims may be barred or limited by the terms and conditions of the policies at issue, or by Plaintiffs' conduct.

WHEREFORE, HNA respectfully requests that the Court enter Judgment:

a.      Dismissing Plaintiffs' Complaint with prejudice;

b.      Declaring that Plaintiffs are not entitled to any of the relief claimed against HNA in the Complaint;

c.      Awarding HNA its attorneys' fees and costs in defending this action; and

d.      Granting such other and further relief as the Court may deem just and proper.

### COUNTERCLAIM, CROSSCLAIM, AND ADDITIONAL PARTY CLAIM

For its Counterclaim against Plaintiffs Air & Liquid and Ampco-Pittsburgh, its Crossclaim against the Insurer-Defendants, and its Additional Party Claim against the Additional

Counterclaim/Crossclaim Defendants (hereinafter, "Additional Insurer Parties"), HNA states and alleges as follows:

### NATURE OF ACTION

51.     This is a civil action for declaratory relief arising out of (a) Plaintiffs' demand for a declaration that HNA has no rights under the policies at issue and (b) the Defendant-Insurers' and Additional Insurer Parties' denial of, or failure to acknowledge, their contractual obligations to pay or indemnify defense costs and to indemnify HNA against liability for underlying asbestos bodily injury claims and suits covered under the excess liability insurance policies at issue, which are set forth in Exhibit A to the Complaint.  HNA seeks, *inter alia*, a declaration of the rights, duties, and liabilities of all parties under the insurance policies issued or subscribed by the Defendant-Insurers and Additional Insurer Parties with respect to underlying lawsuits asserting bodily injury, sickness, and disease allegedly caused, in whole or in part, by the claimants' exposure to asbestos-containing products allegedly manufactured, distributed and sold by Buffalo Forge Company.

### JURISDICTION AND VENUE

52.     This Court has subject matter jurisdiction over the action filed by Plaintiffs pursuant to 28 U.S.C. § 1332; the parties in the Complaint are of diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has subject matter jurisdiction over the entirety of HNA's Counterclaim, Crossclaim, and Additional Party Claim pursuant to 28 U.S.C. § 1367(a) because HNA's claims are so integrally related to claims made by Plaintiff that HNA's claims form part of the same case or controversy.

53.     This Court has personal jurisdiction over the Plaintiffs/Counterclaim Defendants, the Defendants/Crossclaim Defendants, and the Additional Insurer Parties because, within the relevant time period, each has either been licensed or otherwise approved to do business in

Pennsylvania; transacted substantial business in Pennsylvania; insured assets, liabilities and risks located in Pennsylvania; and/or has contractually agreed to submit to the jurisdiction of any Court, including this Court, of competent jurisdiction within the United States.  This Court also has personal jurisdiction over Additional Counterclaim/Crossclaim Defendants ACE Insurance S.A. N.V. (f/k/a CIGNA Ins. Co. of Europe S.A. N.V.); Faraday Reinsurance Company Ltd.; General Star International Indemnity Ltd.; HDI-Gerling Industrie Versicherung AG; New Hampshire Insurance Company; Portman Insurance Ltd. (f/k/a AXA Global Risks (UK) Ltd.); QBE Insurance (Europe) Ltd. (f/k/a QBE International Insurance Ltd.); and Swiss Re Europe S.A. (successor-in-interest to Swiss Re Frankona Reinsurance Ltd. (f/k/a ERC Frankona Reinsurance Ltd.)), because the policies to which those insurers subscribed or for which they are or purport to be responsible expressly cover liabilities arising from events happening anywhere in the world, including Pennsylvania, where asbestos suits continue to be filed against HNA and where covered liabilities have in fact arisen.

54.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

55.     HNA is a corporation organized under the laws of Delaware with its principal place of business in Camden, South Carolina.  HNA is engaged primarily in the business of manufacturing custom engineered air movement equipment and does substantial business in Pennsylvania, including in this judicial district.  HNA is a successor-in-interest to Buffalo Forge Company ("Buffalo Forge"), and is also a successor to Howden Group America, Inc. ("Howden Group America") under the 1993 Agreement discussed below.

56.     Plaintiff/Counterclaim-Defendant Ampco-Pittsburgh is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pittsburgh, Pennsylvania.

57.     Plaintiff/Counterclaim-Defendant Air & Liquid is, according to the Complaint, "a Pennsylvania-based corporation" that is "incorporated under the laws of Pennsylvania and ha[s] [its] principal place[] of business in Pennsylvania."

58.     Defendant/Crossclaim-Defendant Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.) is a corporation organized under the laws of California and has its principal place of business in Burbank, California.

59.     Defendant/Crossclaim-Defendant Allstate Insurance Company (as successor-in-interest to Northbrook Excess and Surplus Insurance Company) is a corporation organized under the laws of Illinois and has its principal place of business in Northbrook, Illinois.

60.     Defendant/Crossclaim-Defendant The American Insurance Company is a corporation organized under the laws of Ohio and has its principal place of business in Novato, California.

61.     Defendant/Crossclaim-Defendant Assicurazioni Generali S.p.A. is a corporation organized under the laws of Italy and has its principal place of business in Trieste, Italy.

62.     Defendant/Crossclaim-Defendant Associated International Insurance Company is a corporation organized under the laws of Illinois and has its principal place of business in Deerfield, Illinois.

63.     Defendant/Crossclaim-Defendant Columbia Casualty Company is a corporation organized under the laws of Illinois and has its principal place of business in Chicago, Illinois.

64.     Defendant/Crossclaim-Defendant The Dominion Insurance Company Limited is a corporation organized under the laws of Scotland and has its principal place of business in Glasgow, Scotland.

65.     Defendant/Crossclaim-Defendant Executive Risk Indemnity Inc. (f/k/a ERIC Reinsurance Company, f/k/a American Excess Insurance Company) is a corporation organized under the laws of Delaware and has its principal place of business in Warren, New Jersey.

66.     Defendant/Crossclaim-Defendant Federal Insurance Company is a corporation organized under the laws of Indiana and has its principal place of business in Warren, New Jersey.

67.     Defendant/Crossclaim-Defendant First State Insurance Company is a corporation organized under the laws of Connecticut and has its principal place of business in Boston, Massachusetts.

68.     Defendant/Crossclaim-Defendant Harper Versicherungs AG (f/k/a Harper Insurance Limited, f/k/a Turegum Insurance Company) is a corporation organized under the laws of Switzerland and has its principal place of business in Zurich, Switzerland.

69.     Defendant/Crossclaim-Defendant Lexington Insurance Company is a corporation organized under the laws of Delaware and has its principal place of business in Boston, Massachusetts.

70.     Defendant/Crossclaim-Defendant Mt. McKinley Insurance Company (f/k/a Gibraltar Casualty Company) is a corporation organized under the laws of Delaware and has its principal place of business in Liberty Corner, New Jersey.

71.     Defendant/Crossclaim-Defendant Sompo Japan Insurance Inc. is a corporation organized under the laws of Japan and has its principal place of business in Tokyo, Japan.

72.     Defendant/Crossclaim-Defendant TIG Insurance Company (as successor by merger to International Insurance Company) is a corporation organized under the laws of California and has its principal place of business in Manchester, New Hampshire.

73.     Defendant/Crossclaim-Defendant Twin City Fire Insurance Company is a corporation organized under the laws of Indiana and has its principal place of business in Hartford, Connecticut.

74.     Defendant/Crossclaim-Defendant United States Fire Insurance Company is a corporation organized under the laws of Delaware and has its principal place of business in Morristown, New Jersey.

75.     Defendants/Crossclaim-Defendants/Additional Counterclaim/Crossclaim-Defendants Certain Underwriters at Lloyd's, London (hereinafter the "Lloyd's Cross-Claim Defendants") comprise the so-called "lead" or active underwriters of each Lloyd's underwriting syndicate referenced in Attachment 2, the members of which subscribed to one or more of the policies set forth in Exhibit A to the Complaint in this action.  Each of the Lloyd's Cross-Claim Defendants is sued in his or her individual capacity and also in his or her representative capacity. In this regard, each policy referenced in Attachment 2 specifically states "that in any suit instituted against any [Underwriter] upon this Policy, Underwriters will abide by the final decision of such Court or any Appellate Court in the event of an appeal."  The same policies contractually obligate the Lloyd's Cross-Claim Defendants to submit to the jurisdiction of this Court in the event of any coverage dispute arising under the policies.

76.     Additional Counterclaim/Crossclaim-Defendant ACE Insurance S.A. N.V. (f/k/a CIGNA Ins. Co. of Europe S.A. N.V.) is a corporation organized under the laws of Belgium with its principal place of business in Brussels, Belgium.

77.     Additional Counterclaim/Crossclaim-Defendant Equitas Insurance Limited (as successor-in-interest to Certain Underwriters at Lloyd's, London) ("Equitas") is a corporation organized under the laws of England and Wales and has its principal place of business in London, England.  Equitas has legally and contractually assumed responsibility for the obligations of the Lloyd's Cross-Claim Defendants and the members of their underwriting syndicates under the policies referenced in Attachment 2.  Equitas is currently responsible for handling, adjusting and paying covered claims under the above-referenced policies to the full extent of the obligations originally assumed by the members of the Lloyd's syndicates identified in Attachment 2.

78.     Additional Counterclaim/Crossclaim-Defendant Faraday Reinsurance Company Ltd. ("Faraday") is a corporation organized under the laws of England with its principal place of business in London, England.  Faraday purports to have legally and contractually assumed responsibility for the obligations of Additional Crossclaim/Counterclaim-Defendant General Star International Indemnity Ltd. ("General Star") under Policy No. LH9813364, which is referenced in Attachment 2.  Upon information and belief, Faraday purports to be responsible for handling, adjusting and paying covered claims under the above-referenced policy to the full extent of the obligations originally assumed by General Star.

79.     Additional Counterclaim/Crossclaim-Defendant General Star International Indemnity Ltd. is a corporation organized under the laws of England with its principal place of business in Ipswich, England.

80.     Additional Counterclaim/Crossclaim-Defendant HDI-Gerling Industrie Versicherung AG a/k/a HDI-Gerling Industrial Insurance Company is a corporation organized

under the laws of the Federal Republic of Germany with its principal place of business in

Hannover, Germany.

81.     Additional Counterclaim/Crossclaim-Defendant Munich Reinsurance America,

Inc. (as successor-in-interest to American Excess Insurance Company) is a corporation organized

under the laws of the State of Delaware with its principal place of business in Princeton, New

Jersey.

82.     Additional Counterclaim/Crossclaim-Defendant New Hampshire Insurance

Company ("New Hampshire") is a corporation organized under the laws of the Commonwealth

of Pennsylvania with its principal place of business in New York, New York.

83.     Additional Counterclaim/Crossclaim-Defendant Old Republic Insurance

Company is a corporation organized under the laws of the Commonwealth of Pennsylvania with

its principal place of business in Greensburg, Pennsylvania.

84.     Additional Counterclaim/Crossclaim-Defendant Portman Insurance Ltd. (f/k/a

AXA Global Risks (UK) Ltd.) is a corporation organized under the laws of England with its

principal place of business in Ipswich Suffolk, England.

85.     Additional Counterclaim/Crossclaim-Defendant QBE Insurance (Europe) Ltd.

(f/k/a QBE International Insurance Ltd.) is a corporation organized under the laws of the

England with its principal place of business in London, England.

86.     Additional Counterclaim/Crossclaim-Defendant Stronghold Insurance Company

is a corporation organized under the laws of England and Wales and has its principal place of

business in Norwich, England.

87.     Additional Counterclaim/Crossclaim-Defendant Swiss Re Europe S.A. (as

successor-in-interest to Swiss Re Frankona Reinsurance Ltd. (f/k/a ERC Frankona Reinsurance

Ltd.)) ("Swiss Re") is a corporation organized under the laws of Luxembourg with its principal

place of business in Luxembourg.  Swiss Re has legally and contractually assumed responsibility

for the obligations of ERC Frankona Reinsurance Ltd. under Policy No. LH9813364, which is

referenced in Attachment 2.  Swiss Re currently is responsible for handling, adjusting and paying

covered claims under the above-referenced policy to the full extent of the obligations originally

assumed by ERC Frankona Reinsurance Ltd.

88.     Additional Counterclaim/Crossclaim-Defendant Tenecom Limited (f/k/a Yasuda

Fire & Marine Ins. Co. (U.K.) Ltd.) is a corporation organized under the laws of England and

Wales and has its principal place of business in London, England.

### THE HISTORY OF THE BUFFALO FORGE ENTITIES

89.     Buffalo Forge was founded in Buffalo, New York in 1878.  It originally

manufactured portable blacksmith forges, but over time diversified its product line to include

large industrial fans, ventilation equipment, compressors, and air conditioning systems.

90.     Upon information and belief, Buffalo Pumps, Inc. ("Buffalo Pumps"), which

manufactured centrifugal pumps used in a variety of industrial applications, became a wholly-

owned subsidiary of Buffalo Forge in or about 1941.  On information and belief, Buffalo Forge

acquired Aerofin Corporation ("Aerofin") in or about 1965 as a wholly owned subsidiary that

manufactured heat transfer equipment.

91.     Upon information and belief, in or about 1981, Buffalo Forge was acquired by

Ampco-Pittsburgh.  Upon information and belief, for some period of time following this

acquisition, Buffalo Forge was operated as a wholly owned subsidiary of Ampco-Pittsburgh, and

was comprised, at least in part, of the assets and liabilities of Buffalo Forge, Aerofin, and Buffalo

Pumps.

92.     By 1993, as a result of internal Ampco-Pittsburgh corporate restructurings, three separate entities existed as wholly-owned (direct or indirect) subsidiaries of Ampco-Pittsburgh: a Delaware corporation called Buffalo Forge Company ("Buffalo Forge II"), which was comprised primarily of the assets of the original Buffalo Forge; a New York corporation called Aerofin Corporation ("Aerofin II"), which was comprised primarily of the assets of the original Aerofin; and a Delaware corporation called Buffalo Pumps, Inc. ("Buffalo Pumps II"), which was comprised primarily of the assets of the original Buffalo Pumps.  Buffalo Forge and Buffalo Forge II are hereinafter referred to collectively as the "Buffalo Forge Entities."

93.     In May 1993, Howden Group America, Inc., Howden Group Canada, Ltd., and Howden Group plc (collectively, the "Howden Entities") entered into a Stock Purchase Agreement (the "1993 Agreement") with Ampco-Pittsburgh and Ampco-Pittsburgh Securities V Corp. ("Ampco Securities V"), a wholly-owned subsidiary of Ampco-Pittsburgh.  Under the 1993 Agreement, the Howden Entities acquired all of the outstanding stock of Buffalo Forge II from Ampco Securities V.

94.     Pursuant to the 1993 Agreement, the Howden Entities acquired all of the assets and liabilities of Buffalo Forge II, including all rights that any of the Buffalo Forge Entities possessed under historical liability insurance policies issued to the original Buffalo Forge or Ampco-Pittsburgh.

95.     In 1994, Buffalo Forge II was renamed The Howden Fan Company.  In 1999, The Howden Fan Company changed its name to Howden Buffalo, Inc.  In 2010, Howden Buffalo, Inc. changed its name to Howden North America Inc., the Defendant/Counterclaim-, Crossclaim-, and Additional Counterclaim/Crossclaim-Plaintiff in this case.

## THE UNDERLYING ASBESTOS SUITS

96.     HNA has been named as a defendant in underlying asbestos tort actions (the

"Underlying Asbestos Suits") alleging that it is subject to tort liability for bodily injury, sickness

and disease allegedly sustained by the underlying plaintiffs as a result of their exposure to

asbestos-containing products manufactured and/or distributed by the Buffalo Forge Entities.

HNA has been named in many of these actions as an alleged successor to the original Buffalo

Forge or its subsidiaries and/or to Buffalo Forge II.

97.     HNA reasonably anticipates that additional asbestos personal injury actions

similar to the Underlying Asbestos Suits will continue to be filed against it in the future.

98.     HNA has incurred and will continue to incur substantial defense costs and

liabilities as a result of the Underlying Asbestos Suits.

## THE LIABILITY INSURANCE POLICIES AT ISSUE

99.     Each of the Crossclaim-Defendants and the Additional Insurer Parties

(collectively, the "HNA Insurers"), or their predecessors in interest, issued or subscribed to

excess liability policies in effect during the period between January 1, 1981 and January 1, 1985

-- when the Buffalo Forge Entities were owned by Ampco-Pittsburgh -- or between July 22, 1998

and May 31, 1999.  Buffalo Forge, Buffalo Forge II, and/or Howden North America Inc. are

insureds under each such policy.  The policy numbers and effective dates of those policies are set

forth in Attachment 1, and are collectively referred to herein as the "Excess Policies."

100.    The Excess Policies require the issuing and subscribing insurers to indemnify

HNA for all amounts it becomes legally obligated to pay in response to claims for bodily injury,

sickness, or disease, as long as (a) any part of the underlying plaintiff's injury occurred during

the policy period and (b) the applicable limits underlying the Excess Policies have been

exhausted.  The HNA Insurers' obligation to make payment on behalf of or to reimburse HNA

(the "duty to indemnify") is subject only to underlying, upper or quota-share limits of liability

expressly set forth in the Excess Policies.

101.     The Excess Policies also require the issuing or subscribing insurers to pay or to

indemnify HNA for all costs, including attorneys' fees, experts' fees, and supplemental

expenses, incurred by HNA in the investigation and defense of bodily injury claims for which the

insurer has a potential duty to indemnify as set forth in the preceding paragraph.  The HNA

Insurers' duty to pay or indemnify defense costs incurred by HNA is subject only to underlying,

upper or quota-share limits of liability expressly set forth in the Excess Policies.

102.     All premiums due under the Excess Policies have been paid and all other pertinent

conditions of coverage have been satisfied.

103.     HNA reasonably anticipates that the limits of underlying insurance for some or all

of the Excess Policies will be exhausted by payment of defense costs, settlements and judgments

for the Underlying Asbestos Suits and other asbestos personal injury claims that have been or

will be asserted against HNA or other entities allegedly insured under the underlying policies.

104.     The HNA Insurers have either denied or refused to acknowledge their contractual

obligation to pay or indemnify defense costs or to indemnify HNA for adverse judgments or

settlements in connection with the Underlying Asbestos Suits.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief—HNA Insurers' Duty to Indemnify)

105.     HNA repeats and incorporates by reference the allegations set forth in Paragraphs

1 through 104.

106.     This is a claim for a declaratory judgment pursuant to 28 U.S.C. §§ 2201

and 2202.  HNA seeks a judicial determination of the rights and duties of the HNA Insurers with

respect to an actual controversy arising out of their issuance of, and subsequent failure to acknowledge their obligations under, the Excess Policies. The controversy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

107.    Pursuant to the terms of the Excess Policies, each of the HNA Insurers has a duty to indemnify HNA as described in Paragraph 100 above, with respect to the Underlying Asbestos Suits and any similar asbestos-related personal injury lawsuits that are filed against HNA in the future.

108.    The HNA Insurers have denied or otherwise failed to acknowledge their duty to indemnify HNA on the terms set forth in Paragraph 107 above.

109.    The issuance of declaratory relief by this Court construing the scope of the HNA Insurers' duty to indemnify HNA under the Excess Policies will terminate some or all of the existing dispute between the Parties.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Relief—HNA Insurers' Duty to Pay Defense Costs)**

110.    HNA repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 109.

111.    This is a claim for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. HNA seeks a judicial determination of the rights and duties of the HNA Insurers with respect to an actual controversy arising out of their issuance of, and subsequent failure to acknowledge their obligations under, the Excess Policies. The controversy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

112.    Pursuant to the terms of the Excess Policies, each of the HNA Insurers has a duty to pay or indemnify defense costs incurred by HNA as described in Paragraph 101 above, with

respect to the Underlying Asbestos Suits and any similar asbestos-related personal injury lawsuits that are filed against HNA in the future.

113.    The HNA Insurers have denied or otherwise failed to acknowledge their duty to pay or indemnify defense costs on the terms set forth in Paragraph 112 above.

114.    The issuance of declaratory relief by this Court addressing the scope of the HNA Insurers' duty to pay or indemnify defense costs for Underlying Asbestos Suits under the Excess Policies will terminate some or all of the existing dispute between the parties.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Judgment—Ampco-Pittsburgh, Air & Liquid, and HNA Insurers)**

115.    HNA repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 114.

116.    This is a claim for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  HNA seeks a judicial determination of its rights and the alleged rights of Ampco-Pittsburgh and Air & Liquid to coverage of asbestos personal injury claims, including the Underlying Asbestos Suits, under the Excess Policies issued or subscribed by the HNA Insurers or their predecessors in interest.  The controversy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

117.    Pursuant to the 1993 Agreement and by operation of law, HNA is insured under, and is entitled to coverage for, Underlying Asbestos Suits under the Excess Policies.  To the extent HNA is sued as an alleged successor to the Buffalo Forge Entities, HNA is entitled to coverage of defense costs, liability and settlement payments under the Excess Policies.

118.    Air & Liquid is not insured under the Excess Policies, and is not entitled to coverage under the Excess Policies, for any underlying asbestos claims or suits that have been or

may be asserted against it.  On information and belief, Air & Liquid contends that it is entitled to coverage under the Excess Policies for certain asbestos claims asserted against it.

119.    HNA is entitled to a declaration:  (a) confirming its rights to coverage of Underlying Asbestos Suits under the Excess Policies; (b) determining whether and to what extent Ampco-Pittsburgh and/or Air & Liquid are entitled to coverage under those same Excess Policies for asbestos claims arising out of the operations or products of the original Buffalo Forge and its former subsidiaries or divisions, and (c) in the event Ampco-Pittsburgh and/or Air & Liquid are determined to have any such coverage rights, equitably apportioning the proceeds available under those Excess Policies between HNA, Ampco-Pittsburgh, and/or Air & Liquid.

## PRAYER FOR RELIEF

WHEREFORE, HNA prays for relief as follows:

1.    On its First Claim for Relief, HNA requests that the Court enter a judgment:

(a)    declaring that under the terms of their respective Excess Policies, each of the HNA Insurers is obligated to pay all costs that HNA becomes legally obligated to pay, including through adverse judgments or settlements, as a result of the Underlying Asbestos Suits and any similar asbestos personal injury actions that may be filed against HNA in the future;

(b)    declaring that the HNA Insurers' duty to indemnify HNA applies as long as any part of the bodily injury, sickness or disease for which HNA is liable (or alleged to be liable) occurred during their respective policy periods, and is subject only to underlying, upper or quota-share limits of liability expressly set forth in the Excess Policies; and

(c)      awarding such other and further relief as the Court deems just and proper.

2.      On its Second Claim for Relief, HNA requests that the Court enter a judgment:

(a)      declaring that under the terms of their respective Excess Policies, each of the HNA Insurers is obligated to pay all costs, including attorneys' fees, expert fees and supplemental expenses, incurred by HNA in the investigation and defense of Underlying Asbestos Suits and any similar asbestos personal injury actions that may be filed against HNA in the future for which each HNA Insurer has a potential duty to indemnify;

(b)      declaring that the HNA Insurers' duty to pay such costs is subject only to underlying, upper or quota-share limits of liability expressly set forth in the Excess Policies; and

(c)      awarding such other and further relief as the Court deems just and proper.

3.      On its Third Claim for Relief, HNA requests that the Court enter a judgment:

(a)      declaring that HNA is insured under, and is entitled to coverage under, the Excess Policies for the Underlying Asbestos Suits or other similar suits asserted in the future arising out of the historical operations and products of the Buffalo Forge Entities;

(b)      declaring that Ampco-Pittsburgh has no rights to coverage under the Excess Policies for asbestos personal injury claims arising out of the historical operations and products of the original Buffalo Forge and its subsidiaries or for Buffalo Forge II;

(c)      declaring that Air & Liquid is not insured under, and has no rights to coverage under, the Excess Policies;

(d)      in the event the Court determines that Ampco-Pittsburgh and/or Air & Liquid have any such rights, declaring the respective rights of HNA, Ampco-Pittsburgh, and Air & Liquid to share in the proceeds available under those Excess Policies for the defense and payment of asbestos claims arising out of the historical operations and products of the original Buffalo Forge and its subsidiaries; and

(e)      awarding such other and further relief as the Court deems just and proper.

### JURY DEMAND

HNA requests a trial by jury on all issues.

Respectfully submitted,

/s/      Danielle S. Barbour

| | |
|---|---|
| William D. Geiger (PA29918) | William F. Greaney |
| DAVIES MCFARLAND & CARROLL, P.C. | Benjamin J. Razi |
| One Gateway Center, 10th Floor | Timothy D. Greszler |
| Pittsburgh, PA 15222 | Danielle S. Barbour |
| Phone:  (412) 281-0737 | COVINGTON & BURLING LLP |
| Fax: (412)-261-7251 | 1201 Pennsylvania Avenue, NW |
| wgeiger@dmcpc.com | Washington, D.C.  20004-2401 |
| | Phone:  (202) 662-6000 |
| | Fax:  (202) 662-6291 |
| | wgreaney@cov.com |
| | brazi@cov.com |
| | tgreszler@cov.com |
| | dbarbour@cov.com |

*Attorneys for Howden North America Inc.*

July 11, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing all counsel of record.

/s/    Danielle S. Barbour    

Danielle S. Barbour
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C.  20004-2401
Phone:  (202) 662-5992
dbarbour@cov.com
