IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION and AMPCO-PITTSBURGH CORPORATION, </br></br>Plaintiffs, </br></br>v. </br></br>ALLIANZ UNDERWRITERS INSURANCE COMPANY, et al., </br></br>Defendants. | Civil Action No. 11-247 |

**ORDER**

AND NOW, this 27TH day of September, 2013, in accordance with the foregoing memorandum opinion, IT IS HEREBY ORDERED that the motions to dismiss (*ECF Nos. 579 & 690*) are **DENIED**, that the second motion for partial summary judgment filed by Howden North America, Inc. (*ECF No. 763*), is **DENIED**, and that the remaining five motions for partial summary judgment (*ECF Nos. 671, 672, 674, 677 & 764*) are **GRANTED IN PART** and **DENIED IN PART**. Pursuant to the Declaratory Judgment Act [28 U.S.C. § 2201(a)] the court enters the following declarations:

(1) Columbia Casualty Policy RDX9176265 (1983), Columbia Casualty Policy RDX9176369 (1984), International Policy 5220112752 (1982), Lexington Policy 5514166 (1981), Lexington Policy B3SED6377014520 (1982), Lexington Policy 5522052 (1982), Lexington Policy 5525028 (1983), London Policy 551/UNA0017 (1981), London Policy 551/UNA0018 (1981), London Policy 551/UPA0019 (1982), London Policy 551/UPA0020 (1982), Gibraltar Casualty Policy GMX02082 (1983), Gibraltar Casualty Policy GMX02469 (1984), Old Republic Policy OZX-11904 (1982), and U.S. Fire Policy 5220106155 (1981),

1

(collectively referred to as the "Non-Settled Insurers' policies"), are governed by Pennsylvania law.[1]

(2) Each of the Non-Settled Insurers' policies is potentially triggered so long as the date of an asbestos claimant's first exposure through the manifestation of the disease occurs during the applicable policy period, and is actually triggered if the immediately underlying policies are either exhausted by actual payments or "functionally exhausted" pursuant to the reasoning employed in *Koppers Co., Inc. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996). Any policy issued by an insolvent, functionally insolvent or settling insurer shall be functionally exhausted upon demonstration by the Ampco-Pittsburgh Companies or HNA of sufficient amounts paid on account of underlying claims that are allocable to the relevant insolvent, functionally insolvent or settled policy pursuant to the terms and conditions of that policy. Exhaustion may be demonstrated by proof of payments from any source other than payments received from pre-1981 insurers.

(3) The Ampco-Pittsburgh Companies and HNA, individually or together, have the right to select any excess policy issued by the Non-Settled Insurers that is actually triggered to provide full indemnification for the underlying claims, subject to the *pro rata* set-off required under *Koppers*, 98 F.3d at 1453-56. The Non-Settled Insurers are entitled to set-offs measured by the apportioned shares of triggered policies issued by settling insurers. No set-offs are required to account for untriggered policies or policies issued by nonsettling or insolvent insurers. In no event shall either the Ampco-Pittsburgh Companies or HNA be entitled to recover more than 100% of their indemnity or defense costs for the underlying claims.

---

[1] With respect to the International, Lexington, London, Old Republic and U.S. Fire policies, the declarations apply only in relation to HNA.

(4) The non-cumulation clauses contained in Highlands Insurance Policy XS203600 (1981), Highlands Insurance Policy XS206480 (1982), Highlands Insurance Policy XS209175 (1983), and Highlands Insurance Policy XS209470 (1984), are applicable to the Non-Settled Insurers' policies falling within their respective towers of coverage. Although those clauses are enforceable under Pennsylvania law, they apply only in relation to other excess policies issued by the same insurer. The non-cumulation clauses found in London Policy 551/UNA0017 (1981), London Policy 551/UNA0018 (1981), London Policy 551/UPA0019 (1982), London Policy 551/UPA0020 (1982), and Old Republic Policy OZX-11904 (1982), similarly apply only in relation to other excess policies issued by the same insurer.

(5) A duty to defend arises out of the following policies: Lexington Policy 5514166 (1981), Lexington Policy B3SED6377014520 (1982), Lexington Policy 5522052 (1982), London Policy 551/UNA0017 (1981), London Policy 551/UNA0018 (1981), London Policy 551/UPA0019 (1982), London Policy 551/UPA0020 (1982), Gibraltar Casualty Policy GMX02082 (1983), Gibraltar Casualty Policy GMX02469 (1984), Old Republic Policy OZX-11904 (1982), and U.S. Fire Policy 5220106155 (1981). Amounts incurred in defending the underlying claims, except settlements of claims and suits, are payable in addition to the applicable limits of liability.

(6) No duty to defend arises out of the following policies: Columbia Casualty Policy RDX9176265 (1983), Columbia Casualty Policy RDX9176369 (1984), International Policy 5220112752 (1982),[2] and Lexington Policy 5525028 (1983).

(7) "Addendum No. 1" applies to the following policies: Lexington Policy B3SED6377014520 (1982), London Policy 551/UNA0017 (1981), London Policy

---

[2] No opinion is expressed about whether, and under what circumstances, TIG may refuse "consent" to the incurring of defense costs otherwise payable under the policy.

551/UNA0018 (1981), London Policy 551/UPA0019 (1982), and London Policy 551/UPA0020 (1982). Multiple claims may be aggregated to invoke the addendum's terms.

(8) New Hampshire Policy No. 95ML0002160A, New Hampshire Policy No. 96ML0002160A, New Hampshire Policy No. 97ML0002180A, New Hampshire Policy No. 97ML0002160A, New Hampshire Policy No. LH9712521, New Hampshire Policy No. LH9813535, and New Hampshire Policy No. LH9813364 (collectively referred to as the "New Hampshire policies") are governed by New York law.

(9) Losses covered by the New Hampshire policies must be allocated on a *pro rata* "time on risk" basis, which means that costs must be divided horizontally among multiple policy years spanning bodily injury. Payments made in excess of the settling insurers *pro rata* shares of liability, in accordance with the 2005 agreement, cannot be used to accelerate the exhaustion of the underlying policies.

(10) HNA must provide notice of its claims and request New Hampshire's consent before incurring chargeable defense costs.[3] Defense costs paid pursuant to the New Hampshire policies are payable only within, and subject to, the applicable limits of liability.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge

---

[3] No opinion is expressed about whether, and under what circumstances, New Hampshire may refuse "consent" to the incurring of defense costs otherwise payable under the policies.